| | |
|---|---|
| RICKY ADAM WALLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | JURY DEMAND |
| CCA SOUTH CENTRAL CORRECTIONAL, ) | |
| and CORE CIVIC OF TENNESSEE, LLC, and ) | |
| certain and unnamed employees of the above- ) | |
| named unidentified Defendants. ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

### I. INTRODUCTION

Plaintiff, Ricky Adam Walls, brings this action for damages pursuant to and authorized by provisions under the Eighth and Fourteenth Amendments to the United States Constitution and under federal law, specifically 42 U.S.C. §1983 and 1988 for assault, failure to protect, complicity/aiding and abetting assault, and neglect and/or intentional infliction of emotional distress, and therefore Plaintiff asks this Court to exercise pendent jurisdiction over all state law claims.

### II. JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §1343, and venue is proper in the United States District Court for the Eastern District of Tennessee pursuant to 28 U.S.C. §1391.

2. The causes of action set forth herein arise from acts and/or omissions committed by the Defendants within this judicial district.

## III. PARTIES

3. The Plaintiff, Ricky Adam Walls, is a citizen and resident of Tennessee, whose residence address is 832 Yellow Branch Road, Decherd, Tennessee. At all times complained of, Plaintiff was a prisoner incarcerated under the jurisdiction of the Tennessee Department of Corrections, and was held by and housed at the Defendant CCA South Central Facility in Clifton, Tennessee.

4. CCA South Central is a subsidiary of and/or owned by Defendant Core Civic of Tennessee, LLC.

5. Core Civic is the new name and face for Corrections Corporation of America, a private company providing prisons and personnel for various state departments of correction across the continental United States for housing individuals convicted of various and sundry crimes. Defendant Core Civic's agent for service of process is CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546.

6. References and averments made to and against Defendant CCA South Central will be simply "South Central".

## IV. STATEMENT OF FACTS

7. Plaintiff Ricky Adam Walls is a combat veteran who suffers from post-traumatic stress disorder and severe anxiety, which led to his use of illegal drugs and subsequent drug related prosecutions and convictions.

8. In October of 2018, Plaintiff was transferred from the Northwest Prison Facility to South Central. On Saturday, October 27, 2018, he and his new cell mate were drinking coffee. Plaintiff was waiting for pill call and his cell mate was leaving for a visit when they got word that Plaintiff was going to be stabbed if he didn't give a pack of ice and a cell phone that he

2

allegedly stole from the Annex back to the Crips.

9. Plaintiff's cell mate left for his visit and the unit manager came and got Plaintiff and took him into her office. Plaintiff asked her to move him until the gang members could verify that it was not him, they were looking for. The unit manager got Plaintiff on the phone with Internal Affairs and he explained to them that the gangs had him confused with somebody, as he had just arrived from the Northwest Facility and had never been in any type of annex. Plaintiff advised that he wanted out of the current situation before something serious occurred. The gangs were looking for a white man who just left the Annex and had stolen two ounces of ice and a cell phone.

10. Internal Affairs knew that Plaintiff wasn't who the gangs were looking for and could have put out the word to the gangs that in fact Plaintiff was not the culpable party. However, Internal Affairs told Plaintiff to go back to his cell and pack up his belongings. The Crips and Vice Lords then thought that Plaintiff had the items referenced as stolen because Plaintiff was being prepared to leave the cell block. Plaintiff was afraid to even walk back to his cell. Plaintiff tried to tell other inmates that he was leaving so that he didn't get mistaken and killed over the alleged theft of the drugs and the cell phone. Nonetheless, Plaintiff received multiple threats from multiple persons of gang affiliation. As a result, Plaintiff just locked himself in his cell and waited for prison guard backup, this being his only option for staying alive in his mind. The HSA Officer came and got the Plaintiff and cuffed him and took him and all of his property to the medical ward. Plaintiff tried to explain to the officers there what was happening, however, it was obvious that they were not concerned about what he was trying to tell them. After leaving the medical ward, the officers took Plaintiff to HSA (High Security Area) along with all of his property. Plaintiff explained to the Commanding Officers what was

3

going on, and told them how the Vice Lords and Crips had him confused with someone else who must have just left the Annex recently. The Commanding Officers knew that Plaintiff had just arrived in the South Central Facility. Plaintiff avers that Internal Affairs could have stopped what occurred by advising the gangs that Plaintiff had just arrived from another facility and had not come in from the Annex.

11. Internal Affairs put Plaintiff in D210 pending an investigation and as soon as Plaintiff walked in the pod, he was being threatened with statements of "You're dead," this is your last night", we're getting that pack no matter what." Plaintiff avers that apparently the Vice Lords and Crips had already gotten word that he was being moved through a cell phone and that he was coming there with the hidden dope and a cell phone.

12. Plaintiff, who suffers with PTSD and extreme anxiety, begged a Commanding Officer to go to medical, that he needed help, and told this CO's his medical problems and that he was a disabled veteran. Plaintiff avers that the CO's laughed, called him a liar and told him that he had some help coming.

13. Plaintiff was sitting in the floor having a panic attack. At that point, the CO popped the door open and a large black man came in hollering and yelling. Plaintiff avers that he remembered the CO saying "here's your help." Right after the CO left the area, a rock man slid the black man a butcher knife under the door. He told Plaintiff that one way or another he was going to give them what he had stolen from them. Plaintiff told him that he wasn't who they were looking for. It was obvious that they were not paying any attention to what Plaintiff had to say.

14. Plaintiff avers that several messages were passed under the door from Crips and Vice Lords telling the black man in his cell to stab him and stomp the pack of dope out of him.

4

15. Every time a Commanding Officer entered the ward, Plaintiff begged and pleaded for them to help him and all they did was laugh at him and call him a liar, that he lied about being a veteran and didn't deserve to live.

16. When Plaintiff's property was finally brought to him, everything was gone except his state clothes. Everything else had been stolen.

17. Plaintiff learned that the black man that was allowed access to Plaintiff's cell was a high-ranking Vice Lord. The Crip in the next cell was telling him to hold him while he pops the door so they could stab Plaintiff and retrieve the stolen dope. Plaintiff avers that he realized that the officers were letting this happen and was having anxiety attacks fearing for his life. Plaintiff avers that Crips and Vice Lords and were allowed to break in cells and were running all over the pod with knives. Plaintiff continued to beg for help and beat on the door for help even flooded the cell trying to get out and to safety.

18. Plaintiff looked out the cell door and saw two or three Crips in the passive tank downstairs and an Aryan Nation's member and two Crips in the next cell along with two rock men at the pod door watching. Plaintiff knew then that things were about to get very ugly very fast.

19. Plaintiff heard the door being picked and could see the lock being slid over. Plaintiff was putting all of his weight on the door trying to jam it. All of a sudden, the Vice Lord in his cell flipped the lights off and grabbed the Plaintiff in a choke hold. Plaintiff fought, however, the Vice Lord choked him until he blacked out.

20. Plaintiff came to and realized he was being drug to the back of the cell. The Vice Lord let go of Plaintiff's neck and Plaintiff fell on his side. The Vice Lord smashed Plaintiff's face down into the floor then put the butcher knife to his throat, and then violated Plaintiff with

his hand trying to find the packet of dope that he thought was buried up Plaintiff's anus.

21. This large black Vice Lord then told Plaintiff that if he told anyone what had transpired, that his family would be killed. Subsequent to this, Plaintiff avers that he stayed on suicide watch for three days, naked and in a freezing cold cell and in shock, couldn't talk, mentally and emotionally broken. Plaintiff laid in the floor until he heard a nurse in the pod and got up and beat on the door to draw her attention and told her if she didn't get him out of this area, that he was going to die.

22. When Plaintiff got out of that unit, the Sergeant on duty (Bumpus) told Plaintiff that next time he was going to put him in the worst gang pod in the facility.

23. Plaintiff filed a complaint with PREA, he was kept in medical for some period of time and subsequently shipped to Coffee County, Tennessee to answer for charges there.

24. Plaintiff avers that all of this should be on a camera in the HSA unit.

25. Plaintiff's counsel was contacted by Plaintiff's parents and interviewed Plaintiff at the Coffee County Jail.

26. Based upon Plaintiff's statements, counsel requested all of Plaintiff's pertinent documentation, including his medical records and internal complaints from South Central Correctional. Plaintiff's counsel began seeking Plaintiff's medical records on January 28, 2019. To date, Plaintiff avers that counsel has not received any of the requested documentation

27. Subsequent to leaving Coffee County, Plaintiff was transported back to South Central, where he is now housed. Therefore, he fears for his safety, particularly with the filing of this Complaint.

## V. CAUSES OF ACTION

### Count I
### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983

6

**(In Violation of the Eighth and Fourteenth Amendments to the United States Constitution)**
**(Failure to Protect)**

28. Plaintiff realleges and incorporates herein by reference the allegations of the Complaint previously set forth herein. Defendant South Central has a considerable history of using gangs to control the prison population in order to avoid hiring the necessary staff for monitoring prisoners incarcerated in its prisons. This history is published and available via the internet as well as various and sundry federal court filings in other states, including the State of Idaho.

29. Plaintiff avers that Defendant's employees as referenced in the Complaint failed to protect Plaintiff, while knowing that Plaintiff could not have been the party that the gangs were after. Further, as referenced in the Complaint, Plaintiff avers that prison staff opened the door to his cell to allow the Crip gang member and leader to enter Plaintiff's cell, wherein he violated Plaintiff by in effect raping Plaintiff with his fist, while holding a knife to his throat. Plaintiff avers that the prison staff allowing this to occur was in clear violation of his Eighth and Fourteenth Amendment Rights under the United States Constitution.

## Count II
**Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983**
**(In Violation of the Eighth and Fourteenth Amendments to the United States Constitution)**
**(Assault/Complicity in Assault/Aiding and Abetting Assault)**

30. Ricky Adam Walls realleges and incorporates herein by reference the allegations of the Complaint previously set forth herein.

31. In allowing the assault against Plaintiff resulting in his rape, Defendant's employees acted under color of state law, and further were complicit in, and aided and abetted in, the assault as set forth herein.

32. As a direct and proximate result of the violation of Plaintiff's constitutional rights

by Defendant's employees as set forth herein, Plaintiff suffered physical as well as mental and emotional damages and is entitled to relief for same under 42 U.S.C. §1983.

33. The conduct of Defendant's employees as set forth herein was willful, malicious, oppressive and/or reckless and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein, in addition to compensatory damages.

### Count III
### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (Failure to Implement Appropriate Policies, Customs, and Practices)

34. Ricky Adam Walls realleges and incorporates herein by reference the allegations set forth in this Complaint previously herein.

35. Defendant's failure to implement appropriate policies for hiring, training, and monitoring its employees and staff at the prison in question as well as other prisons, and allowing certain customs and practices that are otherwise in violation of a prisoner's rights, resulted in Defendant's employees unprofessional as well as criminal complicity in not only allowing, but also in aiding and abetting in the assault upon Plaintiff as described herein, resulting in physical, mental, and emotional damages to Plaintiff entitling Plaintiff to both compensatory and punitive damages.

36. The conduct of Defendant's employees and agents was willful, malicious, oppressive and/or reckless and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

### Count IV
### STATE LAW CLAIM
### (Negligent and/or Intentional Infliction of Mental and Emotional Distress)

37. Plaintiff Ricky Adam Walls realleges and incorporates herein by reference the

allegations set forth in this Complaint previously herein.

38. The mental and emotional distress suffered by Plaintiff is the proximate result of Defendant's failures and/or policies that allow for its agents and employees to conduct themselves in a manner as described herein, resulting in the negligent and/or intentional infliction of mental and emotional distress, and as such, Plaintiff is entitled to relief under state law as a directed and proximate result of Defendant's agents and/or employees' actions, for which Plaintiff is entitled to compensatory and punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the above premises considered, Ricky Adam Walls respectfully requests:

1. That process issue to the Defendants and they be required to answer within the time allowed by law;

2. That judgment be rendered in favor of Ricky Adam Walls against the Defendants on all causes of action asserted herein;

3. That Ricky Adam Walls be awarded those damages to which it may appear he is entitled by the proof submitted in this cause for his physical and mental pain and suffering, both past and present; loss of enjoyment of life; loss of personalty; and any future medical and psychological expenses in the amount of $500,000.00;

4. That Ricky Adam Walls be awarded punitive damages in a like amount against the named Defendants

5. That Ricky Adam Walls be awarded reasonable expenses incurred in this litigation, including reasonable attorney and expert fees, pursuant to 42 U.S.C. §1988 (b) and (c);

9

Case 4:19-cv-00073-TRM-CHS   Document 1   Filed 10/25/19   Page 9 of 10   PageID #: 9

6. That Ricky Adam Walls receive any further and general relief to which it may appear he be entitled; and

7. A jury for the trial of this matter.

/s/Russell L. Leonard
Russell L. Leonard, BPR # 014191
*Attorney for Plaintiff*
1016 West Main Street, Suite 3
Monteagle, Tennessee 37356
(931) 924-0447 Phone
(931) 924-1816 Fax